This is a case involving equitable tolling. The Board of Immigration Appeals had denied a motion to remand and reopen based on ineffective assistance of an immigration consultant. The petitioner... Counsel, would you mind identifying yourself? I'm sorry, Your Honor. My name is Beth Persky and I am the attorney for petitioner Saranush Karapetyan. And the key issue in this case is the fact that the BIA issued its decision in 2010. Since that, the Ninth Circuit has issued several cases directly on point on the issue of equitable tolling that apply to this case. In Avogin v. Holder, a 2011 case 646F3-672, the Ninth Circuit held that the BIA had abused its discretion in denying an untimely motion to reopen based on that the petitioner is prevented from filing for a benefit because of deception, fraud, or error, and acts with due diligence. In this case, the petitioner had detrimentally relied on an immigration consultant who had misrepresented himself as an attorney, and he had informed the petitioner that she did not need to file an appeal of her case. Ms. Persky, may I interrupt you for just a second? Absolutely, Your Honor. Let's take it that you're correct. Let's take it that the fraud committed by the immigration non-attorney consultant is effective to give you equitable tolling. It appears that the check that was altered has a date of June 28, 2008. The motion to reopen was not filed until June 28, 2008. Where is the evidence in the record that your client did not learn of the altered check within 90 days of June 28, 2008? Your Honor, the evidence in the record is contained in the Department of Motor Vehicles and Social Security Administration letters dated April 4, 2008. When the petitioner attempted to verify her status, she went to the DMV and the Legal Presence Verification Unit was unable to determine that she satisfied legal presence. Also in the record is a fraudulent I-94 card prepared by the immigration consultant. Explain to me why the letter of April 4, 2008 from the Department of Motor Vehicles saying they couldn't determine her immigration status tells you that, for the first time, that there's been an altered check? No, Your Honor. I believe that the immigration consultant actually took the checks in attempting to procure other benefits. He had advised the petitioner that she did not need to file her appeal and he would attempt to procure other remedies for her. Can I please return to my question, which is, where is the record evidence of when your client learned the check had been altered? You see, the Board of Immigration Appeal took the position that the immigration judge was not in error saying you learned about the alteration on February the 8th because you hadn't provided any evidence as to what later date was the date of discovery of the fraud. The petitioner provided a detailed affidavit, which is contained in several parts of the record. Instead of giving me several parts of the record, why don't you give me a page number? Yes, 73 to 82. ER 73 to 82. The same affidavit is repeated at CAR 89 to 99 and 110 to 116. All right. Let's see. All right. I now have 73 to 82 in front of me. Is there any particular area of that affidavit that you want me to look at? Yes, Your Honor. If you look at page 3 of the affidavit, the petitioner explains that she was introduced to a paralegal named Marina at a hair salon and found out that she had an office on the premises of the store. Just give me the line that you would want me to read. Let's see. I met Marina on January 18, 2007, again at her office, and gave her $7,000 in cash and one money order in the amount of $261 for government fees. On January 18, 2007, Marina gave me yet another appointment for January 22, 2007 to pick up the I-94 cards showing my legal status in the U.S. Ms. Persky, would you concentrate on the question I asked you? Where is the record evidence as to when your client learned of the altered state of the money orders? I believe when she obtained Attorney Abdullah, if you look at page 8 of the affidavit, he investigated and found out at that time. And when did she? Where does it say that? What date did she say she met or was advised by Attorney Abdullah? Pardon me, can we speak one at a time? Certainly. She was attempting to contact who she believed to be her attorney, Nathan, for a couple of years. However, if you look at page 8 of the affidavit, he stopped taking her calls and she decided to consult with another attorney, finally after diligently attempting to pursue her case. Can you give me a date at which she learned that the check was altered? Let's go to another issue. Okay. Okay, Your Honor. I believe it was when she attempted, when she consulted with Attorney Abdullah. She was entitled to equitable tolling. Can you point to me why the BIA was wrong in saying that on the merits of her application regarding political persecution, she hadn't carried the burden of proof that the Levon, what's it called, was an opposition political party and she had a well-founded fear of persecution? Why was the BIA wrong on that? Because she had also been the target of ineffective assistance by her original attorney who just showed up the day of her hearing, did not adequately prepare her case. Furthermore, the immigration Let me interrupt you for a second. On her motion to reopen on grounds, pardon me, a motion to remand on grounds that the political persecution under Levon Ter-Petrosyan, what was wrong with the finding of the BIA saying that she hadn't proved a reasonable reason to reopen? A reasonable fear of future persecution? The immigration judge only found minor inconsistencies in her testimony. Only found? Minor inconsistencies that did not go to the heart of her claim, Your Honor. Right. What was wrong with that? There were a couple of issues that the IJ had pointed to in his opinion. Let me see if I can find them. The inconsistencies were, alleged inconsistencies were contained under the credibility section in the IJ's opinion and they are not, the immigration judge acknowledged that they were not material and did not go to the heart of her claim. The date that she arrived in Armenia, for example, as a child, which should not be held against her because at the time she was a child. And her husband's mistreatment and injuries, those were the other issues that did not go to the heart of her claim. Thank you very much. Okay. Thank you, Your Honor. Thank you. Good morning. May it please the court, Eric Marsteller for the Attorney General. In this case, the court should deny the petition for review because the board gave reasonable consideration to Ms. Karpachian's evidence and her ever-changing story regarding her alleged ineffectiveness. Could you please keep your voice up? Oh, I apologize. The court should deny the petition because the board gave reasonable consideration to Ms. Karpachian's evidence and her ever-changing story regarding her claim of fraud by the immigration consultant that she dealt with. Well, you do concede that if she was defrauded by the non-attorney Russian immigration consultant, that would be a ground for equitable tolling, correct? We do not agree in this case. The board determined under Hernandez, because Ms. Karpachian was aware that the immigration consultant was not an attorney, that she had failed to establish the exceptional circumstances that would justify it. Under Fajardo, isn't a non-attorney fraud sufficient grounds for equitable tolling? Well, Fajardo, first, it's a 2002 case, so it predates Hernandez. Hernandez made clear that reliance on an attorney and reliance on a non-attorney are very different things. Reliance on an attorney is reasonable, or even someone purporting to be an attorney is reasonable, because one expects an attorney to have knowledge of the laws, they're licensed by the state board and subject to discipline, they went to law school or at least passed the bar, where relying on an immigration consultant is an unreasonable action because that person is not required to undergo any training and there's no kind of indication that they have the qualifications to make these decisions. In this case, the question is whether there was the immigration consultant cost petitioner her opportunity to file an appeal by telling her not to file an appeal. But in this case, the immigration judge, at the hearing before the immigration judge and way back when, specifically told the parties that an appeal would be due within 30 days plus three of when the decision was issued. That decision was mailed to Ms. Carpechan's original attorney before the immigration judge and Ms. Carpechan concedes that she received notice of the decision from her attorney. So under Hernandez, your position is it was unreasonable as a matter of law for her to rely on a non-attorney telling her no appeal was necessary. Where she knew the individual was a non-attorney and where she had been told that she had the right to file an appeal. What if she didn't know? What if that particular set of facts is disputed? Is it sufficient for the immigration judge to tell her? Can you, do you still, does your position still, is it still maintained if that's the sole fact upon which you can rely that? Sorry, yes, I believe it is, Your Honor. In Hernandez, the issue was an alien was, I'm trying to recall the facts, was issued a notice to appear and was told by a consultant that they did not need an attorney. And they continued to appear in court pro se. And the immigration judge repeatedly told them you have the right to an attorney, but they continued to decline to exercise that right. And the court found that they could not make a due process ineffective assistance of counsel claim based on their reliance on the non-attorney's advice when it was in contradiction to the immigration judge, the government's instructions that she had such a right. I think it would be similar here where here the immigration judge petitioner was on notice by the government that she had the right to an appeal. Yet she declined to exercise that right based on the advice of a non-attorney. And in this case, it's worth noting that her story kind of changed as it went along. In her initial motion to reopen filed with the immigration judge, she simply said that she had an unnamed immigration consultant was the individual who gave her the advice of not to file an appeal. In her brief to the board on appeal, she maintained the same thing, that it was a, let me get the language just right. She said she had an attorney-type consultant, but she never indicated that she believed that it was an attorney. And she never indicated that she was told that it was an attorney. Only with an affidavit attached to her motion to remand did her story change. And she, for the first time, alleged that there were actually two individuals, a male and a female. A female named Marina, who was a translator or paralegal, I believe, who she said worked for this man named Nathan, who she was led to believe was an attorney. But that story was not the story presented to the immigration judge or to the board on appeal. And it was not unreasonable for the board to conclude that the advice she received was in her belief from a non-attorney. What about the merits of her case as far as political persecution is concerned? Well, one thing is important to remember is we're not looking all the way back to the original immigration judge decision, finding her not credible. The only question is whether she presented evidence of changed country conditions in Armenia since the time. But she was a member of a different party in 2006. She was, and that claim was found not credible. So that would have to assume her credibility that she was a member of a different party. But she did claim later that she was a supporter of Lavon Ter-Petrosyan at the time of the 2008 election. There was a February 2008 election in Armenia, which was controversial, and there were protests in March of that year, which did result in some violence in Armenia. But the evidence submitted by Ms. Petrosyan, and the board acknowledged in its decision on page 6 of the record that there was evidence in the documents she submitted indicating unrest relating to those elections, but determined that she had failed to show that she had a prima facie case for asylum based on her alleged involvement in support of Petrosyan. Among the evidence she submitted in support of her claim was a letter from a United States-based organization of supporters of Petrosyan, and that letter indicated that she was somehow involved in the group in the United States, but it failed to mention any sort of violence against party members or any risk of harm that she would face were she to return to Armenia. So in light of the evidence, we do not think the board abused its discretion in denying the motion to reopen based on a change of country conditions. Unless the court has any further questions, the government will rest on its feet. Thank you, Your Honors. Thank you very much. The case of Karapetyan v. Lynch will be submitted, and the court thanks counsel for their argument.
judges: Fernandez, Bea, Rogers